## Herman Osthaus, Admr., Plff. in Err., *v.* Thomas W. McAndrew and Wife, In Right of Said Wife.

In a feigned issue to try the ownership of the promissory note of a third person, claimed to have been delivered by a decedent as a gift to the holder, it is for the jury to determine whether facts exist showing that the holder took advantage of the gift under circumstances of dependence, feebleness, sickness, or possible shame, on the part of the donor, such as amount to undue influence and deprive the transaction of voluntariness and freedom on the part of the donor and of perfect candor between the parties.

Evidence of want of undue influence and of the delivery of the note held sufficient to submit to the jury.

(Argued February —, 1887. Decided March 7, 1887.)

January Term, 1887, No. 54, E. D. Error to the Common Pleas of Lackawanna County to review a judgment on a verdict for the plaintiffs in a feigned issue to try the ownership of a promissory note. Affirmed.

NOTE.—For the province of the jury, where evidence is offered to show that a conveyance was a gift, see note to Horn v. Buck, *post*, 480.

The facts, as they appeared at the trial before HAND, P. J., were stated in his charge to the jury, which was as follows:

This trial is called a feigned issue. It is a trial to determine the ownership of a note, given by John Handley to James Morahan, dated the 22d day of September, 1882, for $1,726.63, on which there is a balance unpaid of about $1,054.95.

Ordinarily this note would belong to the estate of James Morahan, and should pass to the custody of his administrator. But it is alleged by these plaintiffs that it belongs to Rebecca McAndrew, the wife of Thomas McAndrew, by reason of a gift on the part of James Morahan, while he was living, called a gift *inter vivos;* that is, a gift between living persons.

This, gentlemen of the jury, is the sole question for you to determine: Was this note a gift absolute to Rebecca McAndrew?

It is alleged that about the 8th of January, 1884, James Morahan gave the note to her, under circumstances as detailed by Mrs. Fannie Gross; that this was a gift, as testified to by her, is corroborated by the testimony of P. C. Clark. This transaction occurred a little over a month before the death of Morahan; he died about the 18th of February, 1884.

It is alleged by the defendant that it was not a gift in law, or if it was, that it was made under such circumstances of undue influence, or duress, as to constitute it an inequitable transaction; such a transaction as equity would not allow to be consummated, but will set aside as being unconscionable.

Now, under this simple, sole issue, you will give your close consideration to all of the testimony in the case, and determine it as the evidence shall warrant you. You will render no verdict in this case for any amount of money. The question of compensation for the keeping and board of James Morahan is not before us. It is only: To whom does this note belong? If it belongs to Rebecca McAndrew, your verdict should be simply for the plaintiff; if it does not belong to Rebecca McAndrew, your verdict should be simply for the defendant.

If your verdict should be for the defendant, it does not prevent the plaintiff, T. W. McAndrew, from obtaining his proper compensation upon his bill presented to the administrator.

Now, to the question: Does this note belong to Rebecca McAndrew? The law on this subject you must take from the court; the determination of the fact is for you, under the rules of law.

In Pennsylvania there is no doubt that a person may give a note, or a chose in action, to another person. After the donor is dead, clear and satisfactory proof of the gift (and of the delivery in pursuance of it) is requisite.

Now, what is the evidence in this case? The evidence mainly turns upon the testimony of Fannie Gross, so far as the plaintiffs' allegations are concerned, as they claim, corroborated by P. C. Clark. We will read that evidence; she testified to about the same on cross-examination, repeating it. The question was asked her: "I wish you would go on and state what was said." That was at the time that McAndrew, his wife, and Morahan were present. Mrs. Gross answered: "Well, my mother told him she would rather have him go; that she didn't want to keep him; there were a great many of the boarders told her they would not stay if she kept him. So they were having a talk about it that day, and he says: 'Well, here,' he says, 'I will give you this paper to pay you for your trouble, and take good care of me while I am sick.' He said, 'I give it to you.'"

Q. "Just repeat again what he said."

A. "He says: 'You take this and take care of it, it is yours;' and he says: 'Take good care of me while I am sick.' She told him she would rather not take him; she would rather he would go; she would rather not keep him at all."

P. C. Clark, who was sworn, testified: "He told me (that is Morahan told him) Mrs. McAndrew had objections to keeping him in her house, and that he would have to leave, and he gave her compensation for the necessary trouble."

We read this testimony because it is the main testimony, but not to withdraw any other facts from your consideration, which throw any light upon this transaction.

[Now, did Mr. Morahan intend to give to Mrs. McAndrew this note absolutely? And did he deliver it to her as a gift?] If he did, then the plaintiffs can recover. If he did not intend it as a gift, but only as a security in her hands for the board and keeping that was due to her and her husband, out of which her husband could obtain his compensation, then it was not a gift, but to secure the proper and legal compensation for the keeping of Morahan.

[There is some evidence in the case, and its effect is for you, that this note was in the possession of Morahan at the time of his death; that it went into the possession of Mrs. Morahan, and

that she delivered it, after his death, to McAndrew, who claimed that he was the executor of Morahan, and should receive it. This evidence, if you believe it, is somewhat corroborated by the evidence of Miss Gannon, that McAndrew said, in the presence of his wife, that this note belonged to the estate of Morahan, and that her mother should receive her share of it in the settlement of the estate, after McAndrew had settled up the estate, he stating at the time that there was a will, and that he was the executor of it.]

There is also evidence that McAndrew did not consider the note as compensation for the keeping of Morahan, by his presenting a bill for his keeping to the administrator, and receiving part pay of the bill from the administrator. This part is not in dispute—the effect of this evidence, on the question of a gift or not, is for you, all to be taken in connection with the evidence on the part of the plaintiffs.

You will understand that, in order to consummate the gift, there must be an intention to pass it, to give it to the donee; and there must be actual delivery of it to the donee.

Now, if you believe the evidence that the note was subsequent to that in the possession of Morahan, it would show that it was not in the possession of Mrs. McAndrew. We speak of this because it is a circumstance testified to in the case. And the evidence must be clear and satisfactory that a chose in action was not only intended to be given, but was actually given, and the possession passed over to the donee.

Another part of this investigation is, Was this transaction, under all the circumstances, a voluntary gift made without undue influence? If it was not, then the plaintiffs cannot recover.

It is not that Morahan was of unsound mind, memory, or understanding, but: Was the note obtained under such circumstances as to constitute undue influence? Or such circumstances as would make it wrong for the plaintiffs to keep the note?

It is in evidence that at the time of this transaction Morahan was more or less of feeble body; that he was sick with a loathsome and unrighteous disease; that he had boarded some time with McAndrew and his wife; that he had no home to go to; that McAndrew and wife were about to deny him board and keeping at their house, because of his condition; and that under these

circumstances he did that which he would not, and ought not to have done, if left free, and with his full judgment in play.

Now, where facts exist showing that a person takes advantage of a gift under circumstances of dependence, feebleness, sickness, and possibly shame, on the part of the donor, such as to amount to undue influence, and deprive the transaction of voluntariness and freedom on the part of the donor, and of perfect candor between both parties, equity prevents the donee from securing any benefit from the transaction.   .   .   .

[In order to apply this principle of equity in this case, do you find from the evidence that such circumstances exist? Now, these circumstances and these facts are for you to find; that is, it is for you to determine whether the evidence proves them. If you find that they do exist, then the plaintiffs cannot recover. It will be inequitable for the plaintiff to recover if she obtained this gift under undue influence.]

In other words, when a gift is set up after the death of the giver, the evidence must be clear and satisfactory.

The plaintiffs ask the court to charge, *inter alia:*

"That if the jury believe the testimony of Fannie Gross, the giving of the note by Morahan to Mrs. McAndrew was an executed gift."

*Ans.* We leave that question of fact for you. We cannot decide that. It is for you to determine, under all the evidence, whether this was an executed gift. If you find from the evidence that it was an executed gift, then it was good and your verdict should be for the plaintiffs. But whether it was an executed gift or not is the real question in the case.

As we look at this case it is a question of fact for the jury, to be determined under all the light that is thrown upon the case from the evidence before you. The evidence has been very ably argued before you on both sides, and brought to your attention specifically; it is for you to weigh it carefully and determine what this transaction was. If it was not a gift to Mrs. McAndrew, or if it was under such circumstances that equity would not enforce it on the principles we have laid down, then the verdict should be for the defendant.

The verdict and judgment were for the plaintiffs.

The assignments of error specified the portions of the charge inclosed in brackets, the answer of the court to the plaintiffs'

second point, the admission of the testimony of Fannie Gross and the submission of the question of delivery.

*W. G. Ward, George S. Horn,* and *Herman Osthaus, pro. per.,* for plaintiff in error.—The evidence shows that the parties were talking about Morahan either going from McAndrew's or continuing with them, and of pay or compensation for the same. The board and care spoken of was the property of the husband. The wife's labor, etc., belonged to the husband. The compensation or pay for the board and care that was to be afforded to Morahan would belong to the husband.

The evidence tended toward proving a contract with T. W. McAndrew, but in no manner toward establishing a benefaction to Mrs. McAndrew.

There was not sufficient evidence in the case to warrant submitting to the jury the question whether Mr. Morahan intended to give to Mrs. McAndrew the note absolutely, and whether he delivered it to her as a gift.

The doctrine that a scintilla of evidence of a disputed fact must be submitted to the jury is exploded. Howard Exp. Co. v. Wile, 64 Pa. 205; Battles v. Laudenslager, 84 Pa. 451.

The confidential relation of the parties and Morahan's condition of dependency, and his physical and mental condition, forbade the plaintiffs to accept so large a gift from Morahan. Huguenin v. Baseley, 14 Ves. Jr. 300.

He who bargains in matter of advantage with a person placing confidence in him is bound to show that a reasonable use has been made of that confidence; the rule applies to trustees, attorneys, or anyone else. Gibson v. Jeyes, 6 Ves. Jr. 278.

The relief stands upon a general principle, applying to all the variety of relations in which dominion may be exercised by one person over another. Dent v. Bennett, 4 Myl. & C. 277.

Whenever one person obtains by voluntary donation a large pecuniary benefit from another, the burden of proving that the transaction is righteous falls on the person taking the benefit. 3 Lead. Cas. Eq. 112.

The improvidence of the transaction under all the circumstances furnishes a probable test of undue influence or fraud. Harvey v. Mount, 8 Beav. 439. That one was anxious to part with his property without receiving an equivalent, and was not in any way biased or influenced by the person with whom the

transaction was made, may relieve the latter from the charge of having used actual fraud and artifice, but it shows the incapacity of the former in the strongest colors, and heightens the presumption of that species of fraud which consists in taking advantage of imbecility, ignorance, dependency, or necessity. Doughty v. Doughty, 7 N. J. Eq. 227; Torrey v. Buck, 2 N. J. Eq. 367.

. Fraud which is *dolus malus* may be actual, arising from facts and circumstances of imposition, or may be apparent from the intrinsic nature and subject of the bargain itself, or may be presumed from the circumstances and condition of the parties contracting. Chesterfield v. Jansen, 2 Ves. Sr. 155, 156.

As to what amounts to undue influence is a question for the judge to decide, upon the circumstances of each particular case, and such circumstances as the nonintervention of a disinterested person, or professional adviser on the behalf of the donor, especially if the donor is, from age or sickness or weakness of disposition, likely to be imposed upon. Griffiths v. Robins, 3. Madd. 191; Dent v. Bennett, 4 Myl. & C. 273; Harvey v. Mount, 8 Beav. 439; Greenfield's Estate, 14 Pa. 505–507; Miskey's Appeal, 107 Pa. 611; Darlington's Appeal, 86 Pa. 512, 27 Am. Rep. 726.

. The conscience of a judge, as chancellor, must be satisfied; and what goes to the jury is to determine the credibility of the witnesses, and to weigh and decide upon the force and effect of conflicting testimony. If the evidence is too vague, uncertain, or doubtful to establish the equity set up, even if believed, it is. the duty of the judge to withdraw it from the jury, either by nonsuit or a binding direction in his charge, as the case may be. Church v. Ruland, 64 Pa. 442.

The verdict of a jury in an equity case is always upon a. feigned issue—as it is in this case, and is not binding upon the court; when the court is dissatisfied with the verdict, it may disregard it and decide the case contrary to the verdict, when, in the opinion of the court, the case should be so decided; and that, too, without sending the case to another jury. Scheetz's Appeal, 35 Pa. 94; Todd v. Campbell, 32 Pa. 252; Freeman v. Staats, 9 N. J. Eq. 821; Allen v. Blunt, 3 Story, 746, Fed. Cas. No. 216.

*John F. Connolly* for defendants in error.

PER CURIAM:

The evidence of the alleged gift of the note, and of the delivery thereof, was amply sufficient to submit to the jury. This question, as well as those relating to feebleness of mind of the donor, and undue influence on him, were sent to the jury in a clear and correct charge. We see no error in the record.

Judgment affirmed.